UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MULLINIX PACKAGES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:13-CV-316 |
| | ) | |
| ANCHOR PACKAGING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

### I.  INTRODUCTION

This patent dispute is before the Court on Anchor Packaging, Inc.'s Motion to Transfer (Docket # 14), seeking to move this case to the United States District Court for the Eastern District of Missouri where Anchor has a related, but later-filed infringement suit pending against Mullinix Packages, Inc.

Anchor argues that the case should be transferred because (1) Mullinix filed its declaratory judgment action in anticipation of Anchor's infringement suit, (2) a critical non-party witness is outside this Court's subpoena power, but within the range of the Eastern District of Missouri, and (3) the Eastern District of Missouri is a more convenient forum.  Mullinix filed a response (Docket # 23), and Anchor has filed a reply (Docket # 25); accordingly, the motion is ripe for ruling.  Because this Court is equally–if not more–convenient than the Eastern District of Missouri, and because the interests of justice suggest transfer would be inappropriate, Anchor's motion will be DENIED.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

By way of background, Anchor and Mullinix are competitors in the commercial

packaging industry.  (Gene Gentili Aff. ¶¶ 3, 7-8.)  Prior to 2010, Anchor had been the primary

supplier of mashed potato containers to Bob Evans Farms, Inc., a position now assumed by

Mullinix.  (*Id.* at ¶¶ 7-8.)  According to Mullinix, mashed potato container sales "peak

dramatically" during the fourth quarter of the year, and, of course, Mullinix's ability to meet Bob

Evans's demand for containers is critical to maintaining a successful relationship.  (*Id.* at ¶¶ 5-6.)

On October 21, 2013, counsel for Anchor sent a cease and desist letter to Mullinix

asserting that Mullinix has been selling a tray that has substantially the same design as those

claimed in three of Anchor's patents.  (Mem. in Supp. of Def.'s Mot. to Transfer ("Def.'s Mot.")

Ex. A.)  The letter went on to state, "Anchor has instructed us to aggressively pursue this matter

in legal action against Mullinix if we do not receive an acknowledgement of this correspondence

within three (3) business days from the date of this letter."  (*Id.*)  The letter then explained, "my

interest is a resolution of this matter and not litigation.  So, if you wish to discuss this matter

further, please acknowledge this letter and contact me to make arrangements for a discussion . . .

."  (*Id.*)

That Friday, October 25, 2013, counsel for Mullinix acknowledged receipt of the letter in

an email and informed Anchor that all communication should be directed to him.  (Def.'s Mot.

Ex. B at 2.)  A few hours later, Anchor replied asking whether they can "discuss this matter next

Wednesday, October 30, 2013?"  (*Id.*)  On Monday morning, October 28th, Mullinix responded,

providing the times it was available.  (Def.'s Mot. Ex. B at 1.)  The following afternoon, at 3:08

p.m., Mullinix filed its complaint for declaratory judgment in this Court.  (Docket # 1.)  A few

hours later, Mullinix, having not received a response to its previous email, sent another email

reaffirming its availability to discuss the matter, and asked Anchor whether it was still interested

in talking.  (Def.'s Mot. Ex. B at 8-9.)

On Wednesday morning, October 30th, Anchor responded, asking to talk by telephone that afternoon; Mullinix responded affirmingly shortly thereafter.  (*Id.* at 7-8.)  Later that morning, Anchor sent another email asking whether Mullnix agreed that "we should consider this discussion and any that follow as [a] resolution or settlement discussion," and Mullinix quickly agreed.  (*Id.* at 6-7.)  The parties were unable to settle the dispute that afternoon; during the conversation, however, Mullinix did not mention that it had already filed a complaint. Mullinix says it remained silent because it simply wanted to hear Anchor's initial proposal before deciding whether to serve process.  (Resp. in Opp'n to Def.'s Mot. to Transfer ("Pl.'s Resp.") 6.)

There was no further communication between the parties until two weeks later when, on November 13th, Mullinix sent an email to Anchor, asking when, per their previous telephone conversation, Anchor anticipated providing a summary of the topics to discuss.  (Pl.'s Resp. Ex. F.)  Anchor never responded to the email, and instead, the next communication between the parties was Anchor's notice that it had filed suit in the Eastern District of Missouri.  (Gentili Aff. ¶ 16.)  After receiving notice that Anchor had filed suit, Mullinix then effected service of process.  (*Id.* at ¶ 17.)

### III.  LEGAL STANDARD

#### A.  Federal Circuit Precedent Controls the First-Filed Analysis and Seventh Circuit Precedent Controls the 28 U.S.C. § 1404 Analysis

As a preliminary matter, there is disagreement between the parties about whether this Court should look to Seventh Circuit or Federal Circuit caselaw concerning the instant motion. The argument arises from the less-than-clear pronouncements of the Federal Circuit itself,

which, on the one hand, has repeatedly indicated that "[i]n reviewing a district court's decision regarding a motion to transfer pursuant to 28 U.S.C. § 1404, we apply the law of the regional circuit." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011) (applying Third Circuit caselaw); *In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009) (applying Fifth Circuit caselaw); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003) (applying Seventh Circuit caselaw).  But, that Court has also indicated that accepting or declining "jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement . . . is an issue that falls within [the Federal Circuit's] exclusive subject matter jurisdiction . . . ." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (citing *Serco Servs. Co., L.P. v. Kelley Co.,* Inc., 51 F.3d 1037, 1038 (Fed. Cir. 1995); *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) *abrogated in part on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288-89 (1995)).

Determining whether Seventh Circuit or Federal Circuit caselaw applies in a motion to transfer an earlier-filed declaratory judgment action has led to contradictory determinations from the district courts of this circuit.  *Compare Caterpillar, Inc. v. ESCO Corp.*, 909 F. Supp. 2d 1026, 1029 (C.D. Ill. 2012) (stating that in an earlier-filed declaratory judgment case that "[i]n considering a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Court must apply the law of the Seventh Circuit, even in patent cases"), *with Berry Floor USA, Inc. v. Faus Grp., Inc.*, No. 08-CV-0044, 2008 WL 4610313, at *2 (E.D. Wis. Oct. 15, 2008) ("To determine the appropriate venue for a patent law case, district courts should look to the case law of the Federal Circuit."). This uncertainty is not confined to the Seventh Circuit.  *See, e.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 3:09-CV-0488, 2009 WL 2634860, at *1 (N.D. Tex.

Aug. 26, 2009) ("[A]lthough the parties have analyzed the first-to-file rule under Fifth Circuit

authority . . . it is unclear whether Fifth Circuit of Federal Circuit precedent controls.").

Instructive, however, is the approach taken by yet other district courts: applying Federal

Circuit precedent when analyzing the first-to-file rule, and regional circuit factors for the 28

U.S.C. § 1404 analysis. *See, e.g.*, *Woodbolt Distribution, LLC v. Natural Alts. Int'l., Inc.*, No.

11-1266, 2013 WL 247041, at *2 nn. 2-3 (D. Del. Jan. 23, 2013) (finding that Federal Circuit

law controls application of the first-filed rule while regional circuit law governs the decision to

transfer under 28 U.S.C. § 1404); *Bajer Design & Mktg. v. Whitney Design*, No. 09 C 1815, 2009

WL 1849813, at *1-5 (N.D. Ill. June 26, 2009) (applying Seventh Circuit factors for 28 U.S.C. §

1404 analysis and Federal Circuit precedent for application of the first-filed rule); *Vanguard*

*Prods. Grp., Inc. v. Protex Int'l., Corp.*, No. 05 C 6310, 2006 WL 695700, at *3-6 (N.D. Ill.

Mar. 14, 2006) (same); *Buztronics, Inc. v. Theory3, Inc.*, No. 1:04CV1485, 2005 WL 1113873,

at 2-3 (S.D. Ind. May 9, 2005) (explaining that the Federal Circuit governs declaratory judgment

actions in patent cases and noting that the Federal Circuit has expressly rejected the Seventh

Circuit's approach on first-to-file issues, but citing Seventh Circuit caselaw when applying the

28 U.S.C. § 1404 transfer analysis).

This approach harmonizes the Federal Circuit's determination that the question of

whether a first-filed declaratory judgment should take precedence over a later-filed infringement

suit is a matter that implicates the need for "national uniformity in patent cases," requiring

regional circuit law to yield in that narrow instance, *Genentech*, 998 F.2d at 937, with the

regional circuit's guidance left to inform on the relevant factors to consider on a motion to

transfer.  Accordingly, on the instant motion, the Court will look to Federal Circuit caselaw

when applying the first-filed rule, and Seventh Circuit caselaw when examining other factors.[1]

## B.  Substantive Legal Standard

Turning to the legal standard, § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404.  "Under § 1404(a), a court may transfer a case if the moving party shows that: (1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve in the convenience of the parties and the witnesses as well as the interests of justice." *Bajer*, 2009 WL 1849813, at *1 (citation omitted).[2]

Where a party files a declaratory judgment action in one district and another party later files a mirror-image infringement suit in another district, courts are instructed to consider the applicability of the first-to-file rule, which, as indicated above, is controlled by Federal Circuit precedent.  *Genentech*, 998 F.2d at 937-38 (discussing the first-filed rule and explaining that Federal Circuit, not regional circuit, precedent controls this analysis).  "The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions."  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).  "But the rule is not absolute; exceptions may be made if

---

[1] The analysis would be largely the same if the Court applied Federal Circuit caselaw throughout its analysis. *Buztronics*, 2005 WL 1113873, at *4.  While both Circuits focus on convenience and interests of justice components, the Seventh Circuit's caselaw is nevertheless useful as it employs well-established, comprehensive factors.

[2] Neither party disputes–and rightfully so–that both the Northern District of Indiana and the Eastern District of Missouri have jurisdiction and are proper venues.  Therefore, the analysis focuses on the third factor.

justified by 'considerations of judicial and litigant economy, and the just and effective disposition of disputes.'" *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed Cir. 2013) (quoting *Coyle*, 394 F.3d at 1347).

Finding an exception to the first-to-file rule requires a "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech*, 998 F.2d at 937-38 (explaining that "the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."); *see also Serco Servs.*, 51 F.3d at 1039 ("The first-filed action is preferred, even if it is declaratory . . . ."). Additionally, the Court may consider "the extent to which the declaratory judgment action filed in [this] forum is anticipatory and motivated by forum shopping," *Vanguard*, 2006 WL 695700, at *3-4, but this is "merely one factor in the analysis," *Micron Tech., Inc. v. Mosaid Techs., Inc.* 518 F.3d 897, 904 (Fed. Cir. 2008).

In fact, the Federal Circuit has repeatedly found that an anticipatory filing alone does not constitute sufficient legal reason to transfer or dismiss the first-filed case. *See, e.g.*, *Coyle*, 394 F.3d at 1348 (reversing the district court because it relied "exclusively on the alleged anticipatory nature of [plaintiff's] suit" while precedent "favors the first-to-file rule in the absence of circumstances making it unjust or inefficient to permit a first-filed action to proceed to judgment . . . .") (quotation omitted); *Genentech*, 998 F.2d at 938 (reversing district court's dismissal of declaratory action because it was premised entirely on the anticipatory nature of that suit, which is "insufficient to warrant refusal to entertain the action"); *see also Serco*, 51 F.3d at 1039-40 (finding district court did not abuse its discretion in dismissing first-filed suit because it considered factors additional to whether the plaintiff's suit was anticipatory).

7

### IV.  ANALYSIS

The analysis starts with the largely dispositive convenience and interests of justice factors, and since they do not provide a "sound reason" for transfer, this relegates the first-filed rule to an ancillary consideration.  *Genentech*, 998 F.2d at 938.

### A.  Convenience

In evaluating convenience, the Court considers: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses."  *Bajer*, 2009 WL 1849813, at *2 (citation omitted).  "As the party supporting transfer, [Anchor] has the burden to show that the [Eastern District of Missouri] is 'clearly more convenient' than the [Northern District of Indiana]."  *Buztronics*, 2005 WL 113873, at *4 (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986)).

### 1.  Plaintiff's Choice of Forum

Plaintiff's "choice of forum is generally entitled to substantial deference, particularly where the chosen forum is the [plaintiff's] home forum."  *Ambrose v. Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871, at *2 (N.D. Ill. July 3, 2002).  "But where, as here, the case involves two identical suits in distinct venues, this factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*, 626 F.3d 973, 979 (7th Cir. 2010).  Because Anchor and Mullinix have each filed suit in their home district, each party "will necessarily be disturbed" by the case proceeding in another district.  Accordingly, this factor is a neutral one.

**2. Situs of the Material Events**

In patent infringement actions "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." *Body Science LLC v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 993 (N.D. Ill. 2012) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994)). "Courts applying this test focus 'on the location of the allegedly infringing sales, or the alleged infringer's place of business.'" *Body Science*, 846 F. Supp. 2d at 993 (citing *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.* 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999) (finding "all of the central facts surrounding [the] patent infringement dispute relate to activities which took place" inside the transferee district because defendant "manufactured, stored, and sold the alleged infringing [products]" in the transferee district)).

Mullinix is headquartered in Fort Wayne, Indiana, in the Northern District of Indiana, and keeps its documents pertaining to the accused infringing products here. Furthermore, although Mullinix does not say that the accused infringing products were designed, developed, and manufactured in this District, it does indicate that two of the individuals who worked on the accused infringing products, Matt McCartney and Kevin Speith, work and reside here. Accordingly, this factor weighs against transfer. *See id*. at 994 (concluding that the situs of the material events is where the accused infringer designed and developed the accused product).

**3. Relative Ease of Access to Sources of Proof**

The third factor, relative ease of access to sources of proof, weighs against transfer for similar reasons. "[I]n patent infringement cases, the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the

9

activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff."  *Fellowes, Inc. v. ACCO Brands Corp.*, 830 F. Supp. 2d 452, 458 (N.D. Ill. 2011); *but see Bajer*, 2009 WL 1849813, at *3 (finding that because of the ease of making documents digitally available, this factor is neutral).

As stated above, Mullinix's relevant documents and employees are located and work at its principal place of business in Fort Wayne, Indiana, which is located in the Northern District of Indiana.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").  Accordingly, this factor also weighs against transfer.

### 4. Convenience to the Parties

As is the case in most litigation in which each party files in its local court, both Anchor and Mullinix argue that because most of their documents and employees are located within the jurisdiction of their respective home courts, that court is more convenient.  "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is not basis for a change of venue; the tie is awarded to the plaintiff[.]"  *Bajer*, 2009 WL 1849813, at *3 (alteration in original) (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003)).  Transferring the case from the Northern District of Indiana to the Eastern District of Missouri, "would merely serve to transform 'an inconvenience for one party into an inconvenience for the other party."  *Bajer*, 2009 WL 1849813, at *3 (quoting *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993)).  Accordingly, the tie here is awarded

to Mullinix.

## 5.  Convenience to Non-Party Witnesses

Notwithstanding the analysis to this point, "the primary concern is not the convenience to the parties but the convenience to the witnesses non-party witnesses, in particular." *21 SRL v. Newegg Inc.*, No. 09-cv-6590, 2010 WL 1178066, at *3 (N.D. Ill. Mar. 24, 2010) (citation omitted).  In fact, "convenience of the witnesses is often considered the most important factor in the transfer analysis." *Body Science*, 846 F. Supp. 2d at 995.

Anchor contends that a former Mullinix employee, Carey Edwards, currently lives near St. Louis and within the subpoena power of the Eastern District of Missouri, and thus outside the subpoena power of this Court.  (Def.'s Mot. 7-8.)  Anchor describes Edwards, a previous Vice President of Sales and Marketing at Mullinix, as a critical witness with knowledge about both Mullinix's design of the accused product and its dealings with Bob Evans Farms.  (Def.'s Mot. 7-8, Def.'s Reply in Supp. of Mot. to Transfer ("Def.'s Reply") 5-7.)  Additionally, Anchor states that its patent prosecutor for the patents at issue is a non-party witness residing in the St. Louis area, also outside this Court's subpoena power, but not that of the Eastern District of Missouri.  (Def.'s Mot. 8 n.4.)  As Anchor sees it, because Mullinix is asserting inequitable conduct in the prosecution of the accused products, its patent counsel is likely an important figure in the case.

Mullinix proffers two of its own critical (and local) non-party witnesses: (1) Bob Wengrow, a former Mullinix employee who "was heavily involved" in the relationship with Bob Evans, and (2) Kevin Speith, a former Mullinix Design Engineering Manager who oversaw its design engineers during development of the accused container design.  (Pl.'s Resp. 11-12.)

According to Mullinix, because it has proffered two critical non-party witnesses, Wengrow and

Spieth, and Anchor has only identified one "speculatively 'critical' non-party witness," Edwards,

this factor weighs in favor of Mullinix.[3]

In arguing this factor, both parties quibble about just how important these non-party

witnesses are to the case. Mullinix contends that Anchor overstates Edwards's importance,

stemming perhaps from its lack of personal knowledge about his true role, and this glaring

deficit is masked by carefully worded, over-blown conclusions. (Pl.'s Resp. 11 (citing Thaler

Dec. ¶ 6, Def.'s Mot. 8).) For its part, Mullinix uses some camouflage of its own, describing

Edwards as "not a primary contact" with Bob Evans and that it "is believed" (a curious phrase

for a former employer to use about a former Vice President) that he had only minimal

involvement with the container's design. (Pl.'s Resp. 11.)

Anchor also takes issue with the fact that Mullinix does not suggest that Wengrow had

knowledge about the accused infringing products, only that he was involved in the relationship

with Bob Evans. (*Id.* at 7.) According to Anchor, this evasion actually reveals Wengrow's

limited involvement. (*Id.*) Finally, Anchor points out that Mullinix only alleges that Speith

oversaw design engineers that developed the accused products, not that he actually had any

personal involvement with it. (*Id.*)

On this record, the hair-splitting about which of these witnesses is important, or more

important than another, is not particularly revealing or enlightening. Thus, devoid of any real

factual record, the Court and the parties are largely left to speculate.

Moreover, although Anchor argues that its prosecuting counsel is an important non-party

---

[3] Apparently, Mullinix does not consider Anchor's patent prosecutor a critical non-party witness; in fact, Mullinix does not even address the matter.

witness outside the compulsory process of this Court, it "fail[s] to explain why they cannot provide the prosecuting [attorney's] testimony via deposition." *Body Science*, 846 F. Supp. 2d at 996 (citing *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, No. 09-1, 2009 WL 1615528, at \*4 (W.D. Wis. June 9, 2009) ("[I]n patent actions, depositions are customary and are satisfactory as a substitute for technical issues.")).

In the end, however, because Mullinix and Anchor have each identified what they describe as critical non-party witnesses, and since neither party has been able to identify–with any type of certainty–whether each of these witnesses would testify at trial or what their testimony would be, this factor is ultimately a neutral one.

In sum, Anchor "has the burden to show that the [Eastern District of Missouri] is 'clearly more convenient' . . . .  It has not done so." *Buztronics*, 2005 WL 1113873, at \*4 (quoting *Coffey*, 796 F.2d at 220).  The convenience factors are either neutral or in favor of Mullinix, and Anchor has not provided "a sound reason to make an exception to the Federal Circuit's general rule favoring the first-filed action in patent cases." *Id*.

## B.  Interests of Justice

The interests of justice inquiry "is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978.  Here, the Court considers speed to trial or disposition in the transferor and potential transferee forums, each court's familiarity with the relevant law, each court's desirability of resolving controversies, and the relationship of each community to the controversy.  *Id.*

### 1.  Speed to trial

In evaluating docket speed the Court looks to the Federal Court Management Statistics to

determine speed of disposition and speed to trial. *First Nat. Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913-14 (N.D. Ill. 2006). Anchor initially contends that because the Eastern District of Missouri has a faster speed to trial, this factor favors it (Def.'s Mot. 9.); however, in its reply brief it equivocates, arguing that the factor does not strongly favor either party. (Def.'s Reply 7 n.3.) Mullinix, on the other hand, cites to a faster disposition time in the Northern District of Indiana, and argues that this factor slightly favors them.[4] Of course, the reported statistics speak to civil cases generally, and not patent cases in particular.

For the twelve-month period ending in September 30, 2013, the median time from filing to disposition in civil cases in the Northern District of Indiana was 10.6 months and the median time from filing to trial was 27 months. (Pl.'s Resp. Ex 1.) By comparison, during the same time frame, in the Eastern District of Missouri the median time from filing to disposition was 9.4 months and the median time from filing to trial was 23.5 months. (*Id.*) As evidenced, the time to trial and disposition in the two districts are not significantly different, and consequently, the factor only slightly favors transfer to the Eastern District of Missouri. *Lewis v. Grote Indus.*, 841 F. Supp. 2d 1049, 1056 (N.D. Ill. 2012) (finding 2.8 month difference in median time to disposition and 5.4 month difference in median time to trial "not significantly different" and finding it weighed only slightly in favor of the speedier district); *Body Science LLC*, 846 F. Supp. 2d at 997 (finding that although its district was 2.5 months faster in median time to

---

[4] Here, Mullinix employs some sleight of hand. In responding to Anchor's argument that the median time from filing to <u>trial</u> is faster in the Eastern District of Missouri, Mullinix argues that Anchor's citation is out of date, and refers the Court to statistics from the twelve-month period ending in September 2013 (as opposed to the twelve-month period ending in March 2013 as cited by Anchor). When arguing about median time from filing to <u>disposition</u>, however, Mullinix cites to the March 2013 statistics–the same statistics it had just criticized Anchor for using–in claiming that the Northern District of Indiana is faster. As is explained in more detail in the text, when looking at the most recent statistics–from September 2013–the Eastern District of Missouri is slightly faster overall.

disposition and 4.8 months faster in median time to trial than transferee district, "the slight

disparity [did not] outweigh[] the other factors favoring transfer").

## 2. Familiarity With the Applicable Law

"Because patent infringement is a question of federal law, both this Court and any

transferee court are 'equally well-equipped to accommodate patent infringement cases.'" *Body*

*Science*, 846 F. Supp. 2d at 998 (quoting *Cooper Bauck Corp. v. Dolby Labs. Inc.*, No. 05-7063,

2006 WL 1735282, at * (N.D. Ill. June 19, 2006)).  Accordingly, familiarity with applicable law

is neutral in the venue transfer analysis.  *See Lewis*, 841 F. Supp. 2d at 1055 n.2 (collecting cases

standing for the proposition that federal district courts are equally familiar with patent law).

## 3. Desirability of Resolving Controversies

In regard to desirability of resolving controversies, "[t]he focus for this factor under

Section 1404(a) is on 'the efficient functioning of the courts.'"  *Buztronics*, 2005 WL 1113873,

at *5 (quoting *Coffey*, 796 F.2d at 221).  The importance is to avoid "redundancy of litigation"

and a "multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising

out of common matters."  *Genentech*, 998 F.2d at 938.  Because neither party has identified any

related litigation–aside from the mirror-action infringement suit–this factor is neutral.  *See*

*Buztronics*, 2005 WL 113873, at *5 (finding judicial economy factor neutral despite fact that

potential transferee venue had related pending litigation because requiring defendant to litigate

his claims from filing in other district court as counterclaims in that action would "avoid the

risks of judicial waste").

## 4. Relation of Each Community to the Controversy

Turning to relation of each community to the controversy, "[r]esolving litigated

controversies in their locale is a desirable goal of the federal courts." *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997). Here, "[t]he Northern District of [Indiana] has an interest in protecting its citizens from infringement and preventing infringers from operating within its boundaries." *Lewis*, 841 F. Supp. at 1056 (citation omitted) (finding "the Indiana courts have a significant interest in addressing a grievance against a corporation located within their jurisdiction.").

Although courts have found that "[w]here an accused product is distributed and sold throughout the United States, several states share an interest in redressing the alleged infringement," *Cooper Bauck*, 2006 WL 1735282, at *7, they have also recognized that "the forum where the research, development, testing, marketing, and sale of accused products occurred has a greater interest in suit than other states." *Body Science*, 846 F. Supp. at 998 (citing *Cooper Bauck*, 2006 WL 1735282, at *7). Here, as was stated above in analyzing situs of the material events and ease of access to the relevant sources of proof, Mullinix's documents and personnel are located in the Northern District of Indiana and Anchor has not introduced evidence demonstrating that any product testing or development occurred outside that forum. Accordingly, this factor weighs against transfer.

## C. Anticipatory Filing

Although the parties spend considerable time in their briefs arguing whether Mullinix's declaratory judgment filing was anticipatory for purposes of deviating from the first-filed rule, analysis of the convenience and interests of justice factors demonstrate there is no "sound reason that would make it unjust or inefficient" to keep the case here. *Genentech*, 998 F.2d at 938. Regardless of whether or not Mullinix's filing was anticipatory, this factor standing alone is an

insufficient basis for transferring the case to the Eastern District of Missouri, particularly since

the convenience and interest of justice factors do not point in favor of transfer.  *See Coyle*, 394

F.3d at 1347-48 (explaining than an anticipatory filing alone is an insufficient reason to grant a

motion to transfer and explaining that "compelling factors" in addition to an anticipatory filing

must be shown in order to legally justify granting such a motion); *Vanguard*, 2006 WL 695700,

at *6 (denying defendant's motion to dismiss because even if plaintiff's first-filed suit was

anticipatory, there were no additional factors to support dismissal of the first filed action).

Moreover, "[t]he creation of [the Federal Circuit] has in large part tempered the impact of

traditional forum shopping in patent cases, so the stakes of a race to the courthouse are less

severe."  *Serco*, 51 F.3d at 1040.

Either way, the Court "is not persuaded that this suit was anticipatory in the pejorative

sense."  *Buztronics*, 2005 WL 1113873, at *6.  District courts have found that a "suit is

'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the

first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant

was imminent."  *Mitek Sys. Inc. v. United Servs. Auto. Ass'n*, No. 12-462, 2012 WL 3777423, at

*3 (D. Del. Aug. 30, 2012) (quoting *Pittsburgh Logistics Sys. v. C.R. Eng., Inc.*, 669 F. Supp. 2d

613, 623 (W.D. Pa. 2009)); *Intersearch Worldwide v. Intersearch Grp.*, 544 F. Supp. 2d 949, 960

(N.D. Cal. 2008) (same); *see Barrington Grp. Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp.

2d 870, 873 (E.D. Wis. 2003) (defining an improper anticipatory filing as "a filing made under

threat of an imminent suit and asserting the mirror image of that suit in another district.")

(citation omitted).  That criteria is missing here.

And although Anchor indicated in its letter to Mullinix that it intended to "aggressively

17

pursue . . . legal action" if it did not receive a prompt acknowledgement of its correspondence, it equivocated from this position just a few lines later by stating its "interest is a resolution of this matter and not litigation."  (Def.'s Mot. Ex. A.)  Moreover, Anchor never indicated that a suit was imminent, instead it merely gave Mullinix a deadline in which to respond to its cease and desist letter.  Declaratory judgment actions have frequently been filed in instances such as this where "a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword.  Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity."  *Buztronics*, 2005 WL 1113873, at \*6 (finding plaintiff's declaratory judgment action was not anticipatory in light of defendant's cease and desist letters) (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir 1988) (*overruled on other grounds by Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368 (Fed. Cir. 2011)).

Accordingly, Mullinix's "conduct can be reasonably interpreted as [its] effort to 'cut to the chase' and resolve the conflict as soon as possible once it reasonably believed it was not infringing the subject patents."  *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 992 (N.D. Cal. 2011) (finding that plaintiff's suit was not anticipatory because the defendant did not threaten immediate suit and because "the mere potential of future litigation would not render a declaratory judgment suit 'anticipatory' so as to vitiate the first-filed rule"); *see Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 412-13 (S.D.N.Y. 2010) (finding that plaintiff's suit was not anticipatory because defendant's intent to sue was "far from clear," as the cease and desist letter failed to include specific deadlines or identify a possible forum for

18

subsequent legal action, and indicated a desire to "negotiate a business resolution"); *but see*

*Berry Floor*, 2008 WL 4610313, at \*5-6 (finding that plaintiff had "at least a partial improper

motivation" because it filed suit before meeting with defendant despite defendants stated

intention of resolving the matter, filed suit in a forum it knew would be inconvenient, and

repeatedly told defendant that suit would be withdrawn if it acquiesced to plaintiff's negotiating

position).

## V.  CONCLUSION

For the reasons set forth above, Anchor's motion to transfer this case to the Eastern

District of Missouri (Docket # 14) is DENIED.  By separate order, this matter is set for an initial

telephonic scheduling conference on April 8, 2014, at 10:00 a.m. (Fort Wayne time).  Counsel

are directed to consult the Court's local patent rules.

SO ORDERED.

Enter for this 5th day of March 2014.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge